All right, the next case we'll hear is United States v. Bautista-Villanueva and Ms. Silver. Good morning, your honors, and may it please the court, my name is Joanna Silver and I represent the appellant, Carlos Bautista-Villanueva. Mr. Bautista specifically asked the district court not to impose supervised release in this case because he was going to be deported. In so doing, he referenced United States Sentencing Guideline Section 5D1.1, which says that the court ordinarily should not impose a term of supervised release if the defendant is a deportable alien. With no explanation for its deviation from this guideline provision, and with no indication that it believed an added measure of deterrence or protection was necessary in this case, the district court imposed a three-year period of supervised release. As a result, Mr. Bautista's sentence is procedurally unreasonable. Now, application note five- We review this for abuse of discretion, do we not? That's correct, your honor, and by my reading, this is probably the first court to do so. Certainly, every unpublished decision of this court reviewed the case for plea and error, and every published decision from another circuit reviewed the case for plea and error as well. Let me ask you this. He did, it looks to me like he entered the supervised release with the special conditions of cooperation with ICE officials, and that you follow any lawful order entered in your case by the immigration authorities. And he earlier noted that this fellow had come back into the country after having been deported. Well, that's correct, your honor. It seems to me that's a different case from a normal deportation case, and that in any case where a defendant has previously been deported, the judge can enter a supervised release in order to put some additional enforcement teeth into his coming back. He'll end up violating the condition of supervised release. But otherwise, there's no skin off his back. If he's going to obey, if you're right and he's going to be deported right after he completes his sentence, he's not going to serve supervised release, and the condition only protects another layer if he comes back. And the court had that reason, that he'd previously been deported. Well, your honor, I have a few responses to that. The first is, if you actually look at the record, the court in making its findings did not mention Mr. Bautista's previous, actually it wasn't even a deportation, it was a voluntary removal. The government mentioned it, but the court never mentioned it. And that's very important, because what this court's inquiry has to focus on is the findings that the district court made. So the district court findings, and they're very brief, they're on two pages, never include the fact that he had one prior removal from this country. In addition- As you said, he first entered illegally when he was 13. Of course he was here, your honor, he was here illegally, we knew that. And obviously, whether he came illegally at the age of 13, and whether that was of his own volition is questionable, your honor. But this court's job is not to review, this isn't a substantive reasonableness claim, your honor. We're not asking whether your honors think it was reasonable to impose it. Well, the question is whether the word normally can be bypassed in a circumstance where a defendant has previously come into the country illegally. Right, and there's no case that says that that's the measure. But we get to construe normally, don't we? And add normally. But you need to do that in light of the application note. And so the application note is what provides this court with guidance. And the application note says that the district court must find that an added measure of protection or deterrence is necessary. It says with the special conditions of cooperation with the ICE. He basically entered the supervised release in order that he be That doesn't indicate that he believed an added measure of deterrence or protection was necessary in this case. It looks to me like that's what the judge is thinking. Well, your honor, if you actually could see, if you look at the judge's own words, the judge is actually thinking the opposite. If you look at page 35 of the transcript, the judge actually said that he believed the seriousness of his criminal history was balanced against other mitigating factors such as his age and the fact that the convictions were old and over a relatively brief period of time. And as a result, he imposed a downward departure for criminal history over representation. And then the court specifically said that he has what I perceive as a reduced likelihood of recidivism. Yeah, but then he goes on to say that measured approach reflects the seriousness of the offense, just punishment, adequate deterrence, and promote respect for the law and protect the public from further crimes of the defendant. Right, and that is about as ordinary as a court's findings could get. I mean, that is a recitation of 3553A. He makes that finding, and in the next page, when he issues supervised release, he says, I want the condition to be that you obey the orders of the ICE. Your honor, that doesn't equate to a finding that an additional measure of deterrence or protection is necessary. First of all, from a practical standpoint- When you look at the application note, it says that the court should consider. It doesn't say the court shall, the court is required to consider. That seems to be, at least to me, you can tell me what interpretations other courts have given it, that that's not a mandatory consideration, it's a suggestive consideration. Well, it's actually interesting, because if you read it in conjunction with the guideline itself, the guideline itself sets the rule, which is that it ordinarily should not impose the term of supervised release. And then, it basically is crafting an exception here. And so this, what you're saying is not mandatory language, which is correct, is creating an exception. So in a narrow class of cases, if there's a finding that there needs to be an added measure of deterrence or protection, the court should impose a period of supervised release. And what is important to know is that every single case that has looked at this issue, the Fifth Circuit cases that were published, the Ninth Circuit published case, the Second Circuit published case, and the unpublished decisions of this court, they do say that there needs to be some finding. So it's not, because if there's no finding of an added measure of deterrence or protection that that is needed, then this guideline has absolutely no meaning whatsoever. I mean, all of our guidelines now are not mandatory. We know that. And for any, the commission obviously had reasons that it created this guideline provision. Why isn't it meaningful to order supervised release to comply with orders in cases where the defendant has previously been deported illegally? There are two reasons it's not meaningful. One is that it's completely superfluous. It's not necessary, because if a defendant- It's quicker, it's easy, it's another layer of enforcement. If a defendant- You don't have to go through the process of violating supervised release. But the defendant violated supervised release simply by coming back. You don't need the special condition, your honor. He violated a new law. I mean, it's literally, that condition is redundant, because in every single standard condition of supervised release, it says you may not violate any laws. And so by coming back into the country, they're violating a new law. And so that condition itself is meaningless. In addition, practically speaking, because I have many, many of these cases, because I'm a Spanish speaker, that anytime a judge imposes supervised release in an illegal reentry case, they impose that condition every single time. And it's important to note that in every case that reviewed this issue, well, first of all, there are only two cases that reviewed this issue, and there are two unpublished decisions of this court that even mentioned the addition of that condition. So every other case, the published cases from other circuits and the unpublished cases from other circuits, never mentioned whether that condition was a factor. But what's more important is that condition, the presence of that condition, even in those two unpublished cases by this court, was one of many factors. There was plenty of evidence in the record from which the reviewing court could discern that the district court felt an added measure of protection or deterrence was necessary. And that's what procedural reasonableness is about, your honors. It's about whether or not this court can look at the record and determine what decision the district court made and why. Not whether that decision itself was reasonable, not whether the court agrees with it, but why. What are you asking this court to do? I'm asking this court to vacate the sentence and remand it for resentencing. Don't you think the same sentence would be imposed? I actually don't. I really don't, because I don't actually think that Judge Quarles was fully understanding his obligation in this case. And I think if Judge Quarles revisited, if he looked at the findings he made last time, I think he would agree that he did not believe there was an added measure of deterrence or protection necessary in this case. He specifically, not only did he make those findings that there was a reduced risk of recidivism, but he himself pointed to facts in the record. I heard that the fellow had been deported and then re-entered illegally. Well, that's the crime he committed, your honor. That's why he was there. And that's the point of the guideline, your honor, is that in every single one of these cases, someone has been deported after committing a crime and has come back illegally and for- They did not issue, let the law enforcement authorities have the privilege of finding him in violation of supervised release when he comes back. How is your client hurt otherwise? Well that, he's hurt because he'll be prosecuted again. Well sure he's going to be prosecuted again because he's violating the law. Right, so that's how he'll be hurt. And a special condition. What is your gripe? What is your client fearful of with this supervised release? Respectfully, your honor, that question isn't relevant to our analysis because we're not- I'm asking a question for an answer. The question for an answer is that the United States Sentencing Commission made a policy decision that in ordinary cases- I'm asking what is the harm to your client with this order of supervised release? That he'll be, he'll have additional punishment that might not be necessary because- Wait, if he violates the law? Yes. Well, that's the protection that's needed then. If that's what he's worried about, he says, I want to have a scapegoat if I violate the law again. It seems to me if he has the intent not to violate the law, he's going to go back and work in Mexico. There's no skin off his back. And that's not how we judge the reasonableness of sentences in this case, your honor. No, but there has to be some harmfulness or some- That's not correct. That's not correct. We're reviewing this for an abuse of discretion. This is not a plain error. There does not need to be any harm to the defendant. What we're looking at- You're asking us to say when the district court entered this condition in this context, it was an abuse of discretion. No, I'm asking the court to say that when the court ordered supervised release without finding that an added measure of protection or deterrence was necessary, either explicitly, as many other courts have done, or implicitly by talking about all of the reasons why he thought the defendant was dangerous and might come back, that that is a procedurally unreasonable sentence. The protection involves dangerousness? How about a protection against reviolating the law? And that's the deterrence piece. And he actually found- But all the conditions of supervised release involve that. They're all duplicative. When you focus in on any condition of supervised release, most of them, they usually can be caught into a big generic one also. Well, not necessarily, but- In this case, we have a situation where the man was deported, and he came back illegally, and the judge is saying, I'm going to issue supervised release that you obey the order and stay out. And if you come back, there is another layer of prosecution that can take place. Violation of supervised release. But he says, I'm not coming back. But your honor, the point of a procedural reasonableness review is that we don't know why he did that. He could have done that because he felt like it. He could have done that because he thought he disagreed with the policy behind the guideline. He could have done that because he didn't understand the new guideline, because I was the first attorney, and frankly, I may have been, because the guideline was so new, who stood before him and cited the guideline. There are many, many reasons why he could have imposed that condition, and the point is, we don't know. And this court has held many times, it first held in United States versus Carter in 2009, that a reviewing court may not search the record for clues to explain the district court's findings. The district court's sentence. It can't rely on statements made by counsel or by the government. The district court imposed supervised release because he said within the same sentence, I'm doing it in order to have you comply with ICA order. Respectfully, your honor, he did not say that. He did not say that, and there actually are cases, and I cited many of them, where the court said just that. There are many cases in which the court said, I am imposing supervised release because I want to make sure you understand how serious I am about keeping you out of this country. There are cases in which the district courts impose supervised release because they said, I don't think the sentence is enough, and I have concerns based on your history of recidivism that you may come back again. If you look at the facts that district courts themselves pointed to when they imposed supervised release or just in explaining their sentence, they looked at defendants whose criminal histories were so bad that they had to give upward departures. They looked at defendants who had not one, but multiple prior reentries. And they looked at defendants who had prior convictions that the district court itself focused on as being particularly bothersome, such as violence towards children, such as gang membership. The best outcome your client could get if we agreed with you would be to send it back for the court to determine whether or not it was still going to impose supervised release. That's correct, your honor. And I understand it's not a big ask, but it's very important. As this court knows, you're obviously thinking about this defendant, but you're thinking about future defendants. And the guidelines were written for a purpose. If the government had a policy gripe with this guideline, it could have raised that below. It did not, and I'd argue it waived that. The government never asked for supervised release. It never objected to the pre-sentence report, which specifically said supervised release should not be imposed. And it never objected when I specifically asked for no supervised release. So the government has waived substantive reasonableness and waived any policy argument. The pre-sentence report just alerted to the judge that you don't do- It said that ordinarily you should not impose supervised release. And ordinarily the guideline applies to any case where there's deportation. Where there is- Which would be an alien who commits, how about an aggravated felony, or an alien- Yes, any of these. They're all deported. So if you take the one class of cases where an alien has previously been deported, it seems to me that a court could conclude that that's not the normal. The normal would be any offense. Well, but the problem- This is a case where the guy has shown an experience of violating ICE laws. The problem is two-fold, Your Honor. First of all, he was not deported previously, he voluntarily removed. Second of all, the district court did not rely on that fact. There is nowhere in the record in which the district court pointed to the fact of his prior removal in determining that he should impose supervised release. I'd also- The judge made the observation he was removed from the United States to Mexico on December 5, 2007, and re-entered the country without authorization and was found here in 2005. And that's the crime he committed. All the judge was doing was- I understand, but he was- So then how is that not ordinary, Your Honor? Every single, every, what the judge referred to here was the facts underlying Mr. Bautista's conviction in the case before the court. It's not ordinary because the nature of the crime he committed was leaving the country, and the condition is you don't come back. The idea in other cases where he robs a bank and is deported, there's no indication that he wouldn't obey an ICE order. Your Honor- If the court wants an order as a condition, I don't see why you don't see that distinction. Your Honor, I do understand that distinction. And if this court was reviewing the case for substantive reasonableness, then perhaps- Does discretion abuse a discretion? No, Your Honor, but the point is this is a procedural reasonableness case. Abusive discretion is a standard of review that the court applies. How can you say he misapplied it if he's authorized to enter supervised release? The court's authorized to enter it. He misapplied it because he didn't tell us why. That's exactly that, and that's what procedural reasonableness is all about, is that we need to know, in order for this court to be able to review the substantive reasonableness, we need to know that the court followed the correct procedure. And this court has now, over the last several years, since Gall and Rita came out, you've reversed many, many cases where the court does not give a satisfactory explanation. We've also allowed to draw inferences based on what the court considered and what the court said in its context. And here, the court clearly acknowledged that the man had been removed and came back. And the court also said, in the supervised release, the condition that he wanted for imposing the supervised release. I understand that, Your Honor. And if the court chooses to hold him that way, it will be the first court to have done that. There's no other court that has actually relied solely on the fact that a condition- The whole issue is of fairly minimal consequence if the guy is going to be a law-abiding citizen. And we shouldn't presume he's going to violate the law. Your Honor, that's not how the court makes decisions. Whether it's legally correct or not. Because this isn't, we're not talking about plain error. We're talking about an abuse of discretion. And you're talking about this new law that we're going to change the law and affect everybody. The truth of the matter is it's not going to affect even your client unless he violates the law. Well, then that respectfully is a policy decision that should be taken up with the sentencing commission. If this, essentially what the court's saying, that this application note and this guideline should not apply in illegal re-entry cases. It normally has some meaning, doesn't it? It has to have some meaning. It's subject to construction. It has to have some meaning, Your Honor, and that's our whole point. And respectfully, I've gone well over my time. Okay, thank you. Mr. Rosenstein. Thank you, Your Honor. Good morning. Rod Rosenstein for the United States. Your Honors, we believe that in essence what defense counsel's arguing is that Judge Quarles failed to use the precise words in the guideline, the advisory comments to the guideline. And it's our position, Your Honor, that if they had that objection at the sentencing hearing itself and had raised that, the court may well have used those precise words. But that wasn't the issue. The issue was whether or not the defendant qualified for supervised release. And it's our position, as the court has noted, that there actually are many factors that were quite clear in the sentencing transcript for why the court determined to impose this particular condition of supervised release. Let me ask you this. Did the district court even refer to section 5D1C? In the district court's comments, the district court did not specifically refer to. Didn't even refer to that. But he did impose supervised release with a particular condition. Well, I would suggest to you that the conditions that the district court imposed are all required without further order. I don't believe that's correct, Your Honor. And the reason why I disagree with defense counsel is that- Well, the condition that he cooperate with immigration officials. Yes, Your Honor. That doesn't require another court order. Well, Your Honor, actually, we believe that that is a special condition. That is, it's not just that you're not re-entered, it's that you cooperate in the deportation. I bet you it's printed in the form that was in with the sentence, those conditions which would be required. Well, Judge- And one was that he follow any lawful order entered. Well, that doesn't require any further condition. But, Your Honor, the specific condition is to cooperate with ICE officials. And let me explain why I think that's significant. Your Honor, just last week- Let me get through reciting all of them. That the judgment includes the conditions of supervised release that defendants surrender to a duly authorized immigration official for deportation. That's going to be required anyway. Just last week, Your Honor, the government released statistics showing that approximately 60,000 aliens had been released back in the United States because the government had been unable to deport them. That is simply the fact that they're subject to deportation does not always mean that they'll be deported. Aliens who resist deportation- Well, this fellow is definitely going to be deported. He's definitely subject to deportation, Your Honor, but the reality is that there are- You don't have any doubt, and I don't have any doubt that regardless of what we do here today, he's going to be deported. Certainly, ICE is going to make efforts to deport him, but the representation I'm making to the court is that there are cases where deportable aliens have not been deported because they successfully resisted deportation. We're dealing with this case right here, Mr. Bautista. Our position, Your Honor, is that Judge Quarles, by entering that special condition, was seeking to ensure that this defendant would cooperate and would, in fact, be deported and would not resist deportation. What do you think that guideline means, 5D1.1C? The guideline has been construed by the Fifth Circuit to be a hortatory guideline. That is, the court should not impose it on every alien. There should be something particular about this case that distinguishes it from the ordinary alien. Where I differ with defense counsel, Your Honor, is that she suggests that every alien is an alien who's been convicted of illegal reentry. That's not true. Many aliens are convicted in our federal courts who have not unlawfully entered, who are subject to deportation, but they've committed other crimes here, fraud crimes, for example. So that factor, in fact, is not necessarily one that's shared in common with all aliens. But that's just one issue, the fact that the crime of conviction is an unlawful reentry. In addition, there's the immediacy of the defendant's return from deportation, after deportation, or as the defense counsel represents, removal. He was removed on December 5th of 2007. He admitted that he returned in 2008. That's the defendant's own admission, which is in the joint appendix at page 71. He has longstanding ties to the United States. He came here alone at age 13. He's now 37 years old. He spent almost every day of the past 24 years in the United States. Defense counsel actually argued successfully to the district court that he had strong family ties, a strong incentive, therefore, to return to the United States. He had returned to be with his son and his mother, in joint appendix 34, that is found. He reported that his mother, his stepfather, and all seven siblings reside in Baltimore. His wife and son also reside in there. What does all that mean? All that means- You think he's going to try to come back? It means he has a strong incentive to be here in the United States, which distinguishes him from- Well, if he comes back, it's going to be unlawful entry. He's going to be charged with that. He's going to be charged with that. That's correct, Your Honor. The additional incentive of supervised release is the defendant who re-enters in violation of the courts of- I understand all that. If he's charged as a crime with re-entry, the sentence is going to be more severe than if he violates supervised release. It may be, Your Honor, but the supervised release is more- Let me ask you this. The Fifth Circuit just decided a case in 2013. It's found at 714 Federal 3rd, 347, and the part that I'm interested in is 350, which I find very interesting. It observes that the commission was, quote, animated primarily by administrative concerns inherent in trying to administer supervised release as to someone who has been deported. That's referring to the statute that we're concerned with. What do you say to that? That's correct, Your Honor. The sentencing commission determined that the former procedure, which was to impose supervised release on all aliens, was creating an administrative burden. That is, I'm sure it wasn't a significant burden, but it was some burden at least to enter into the system that all those aliens were subject to supervised release. If he is- I mean, when he's deported, not if, who would administer the supervision in Mexico? After he's deported, while he's in Mexico, nobody will administer the supervision. But keep in mind, Your Honor, there- What's good a supervised release going to do if nobody's going to administer it? We think, Your Honor, that Judge Quarles specifically was focused in his special condition on the period before he gets deported. It's not as if he'll automatically be in Mexico. He's in custody now, isn't he? He's in custody now, right. And when he comes out of custody, he's going to be turned over to the immigration people for deportation. That's correct, Your Honor. My understanding is that there are defendants who have successfully resisted deportation orders. Now, you might think that we would just take them to the border and throw them across, but that's not in reality what happens. There's a process of getting travel documents, and there are defendants who successfully resisted. So we believe the court- Where do I find the statistic that there's 60,000? Well, this, Your Honor, was a government report. I believe it was a GAO report that was in the news last week. That's not in the record here, but we'd be happy to supplement the record. Do they resist it by means of what kind of process? Well, it doesn't have the details, Your Honor. But my understanding from ICE is that there are situations where defendants have resisted cooperating and getting travel documents. There are also situations, of course, where the native country refuses to accept them. And then the United States is stuck, unable to deport the alien. Well, look, you raise an interesting point. If nobody's going to supervise this person under the supervised release, what are all these so-called other conditions that the judge imposed? What is it going to mean? Those would only kick in, Your Honor, if the defendant were, in fact, not successfully deported and, therefore, subject to supervision while he was still in the United States. Make sure I understand what you said. If these conditions were imposed only for the point that if he was not deported, they would apply. Well, the conditions other than cooperation with ICE authorities. Other than that, they wouldn't apply? Well, if he's in Mexico, he's not going to be receiving, for example, drug and alcohol treatment. Well, what are the conditions that I referred to that Judge Quarles imposed? Which ones do you say would remain viable after he's deported? Many of the conditions, Judge Hamilton, that you're pointing to are the standard conditions. I was focused on the special conditions. I'm talking about the, yes, I'll use your term, the expanded conditions that Judge Quarles imposed. Right. What he says on the record at page 36 is special conditions of, one, cooperation with ICE officials, and then drug and alcohol screening and treatment. But the particular issue which the judge was focused upon was the cooperation with ICE officials. And we believe that— I want to make sure I understand what you're saying. That applies only if he's not deported. Is that what you're telling me? Cooperation with ICE officials is the cooperation in the deportation process. I'm ordering you to cooperate. Whatever procedures ICE is required to undergo to get you— Cooperating through the deportation. Through the deportation process. But after the deportation, it doesn't apply. When he's no longer in ICE custody, there's no cooperation with ICE, right? So those special conditions that the District Court imposed have no applicability after the defendant is deported. That's correct, Your Honor. That would be—if the defendant, in fact, does not resist and he gets successfully deported, that condition would be—essentially, Your Honor, that would be compliant. So how can you say that justifies the imposition of supervised release? The reason, Your Honor, is that if there is no supervised release at all, then on the last day of the defendant's term of imprisonment, he's no longer under judicial supervision. Therefore, the judge has no power to discipline the defendant for anything he does after the final date of his imprisonment. This supervised release allows the judge to exercise continuing jurisdiction. So if the defendant— Up until the time that he is deported? Between the time when he's released from Bureau of Prisons and the time that he is successfully deported across the board. So are you representing for the government that once he is deported, the conditions of supervised release no longer apply? Well, Your Honor, the conditions of supervised release apply if he returns to the country. Can you give me an answer to that question, yes or no? Our position, Your Honor, is that the conditions would apply whenever the defendant's in the jurisdiction of the United States. Now, if he's successfully deported, he's no longer going to be available to the probation officer. But if he returns, then he's again subject to these terms. So if he returns and he's found in the United States, then the probation officer would have jurisdiction over him, independently of any criminal prosecution that might follow for his reentry. And there may be cases, Your Honor, in which the government decides he'll be sufficiently punished by Judge Quarles in the supervised release violation and there's no need to prosecute him separately for the illegal reentry. Well, the only one that actually would have any effect would be that if ordered deported, the defendant shall not reenter the United States without express permission of the Attorney General or his designated representative. And that, Your Honor, that's a standard condition, follow the law, right? Whereas the cooperation with ICE authorities is a special condition that Judge Quarles had imposed. What would be the detriment, other than your time, if this case went back, you have a hearing,  and he puts it in the order? I mean, that seems to be a fairly innocuous solution. I'm not saying it's the correct solution, but I mean, isn't that practically about all that would happen? Your Honor, I think that that is true, time and expense of bringing the defendant back to Baltimore, reassembling the lawyers, and having that proceeding. But we would turn that question around, Your Honor. The question we would pose is, if the defendant had this procedural objection, why didn't they lodge it at the time of the sentencing? Or why didn't they file the motion for reconsideration? Instead, two days after the sentencing, they filed a notice of appeal. This is the sort of issue that could have been resolved by making a more specific objection in the district court. Now, they had asked for the court not to impose supervised release, but they never made a procedural objection.  We do think it becomes relevant when the court looks to the abuse of discretion standard. Was there more that the court needed to do? And the reality is, we believe the reason they didn't make that objection in court is because in the room . . . Maybe they just wanted you all to add an extra paragraph in your presentations to the court in cases that involve aliens and the imposition of supervised release. Essentially, that's what the defense is asking for, is that the court should be required to use those precise words in the commentary to the sentencing guideline. And if not, the defendant essentially gets a second shot at it. But again, it's our position, Your Honor, that because it's such a relatively insignificant issue, and because all that's missing are those magic words, that the defense, if they wanted to be, those magic words said, should have specifically asked for them. They preserved the issue for appeal, but under abuse of discretion review, we believe the facts and the record are sufficient. Arguably, you could post book or raise that issue on a number of procedural reasonableness appeals because they go back, same sentence as imposed, but that's what the Supreme Court tells us we have to do. Well, Your Honor, this court, in fact, were governed by Lynn, which is cited in the briefs. Lynn stands alone over the Fourth Circuit, is the only circuit at this point that permits a defendant to raise an appeal on solely procedural reasonableness where they haven't raised an objection in the district court. The Third Circuit, in a case called Sevilla, stood with the Fourth Circuit, but just last week, the Third Circuit took that issue en banc. So while it's true that the defendant preserves the procedural reasonableness appeal, we believe that the abuse of discretion standard shouldn't require the district court to use specific words from the sentencing guidelines. And if I might, Your Honor, just raise one additional point, and that is to address a point the defense raises. They represent it in their brief that the defendant was of good character, and they point to the sentencing transcript and suggest that the district court departed downward indicating the defendant's criminal history was not serious. It's our position, Your Honor, that that's not correct. The district court departed downward by one criminal history level from 5 to 4, not because the defendant's criminal history wasn't serious, just because it wasn't that serious. Nonetheless, the record shows, as the district court found, and I'm quoting from the record, from the district court's findings, Joint Appendix 34, the defendant has addled convictions for trespass, grand theft auto, controlled substance possession, second-degree assault, violation of an ex parte order, and burglary and felony theft. So it's our position, Your Honor, that that is a quite serious criminal record, warranting criminal history category 4, if not 5, and that that was a relevant factor for the district court as well. I may have misunderstood you, but you're not contending that the defendant didn't preserve this issue for appeal, are you? Under Lynn, the defendant does preserve the issue for appeal. The question, Your Honor, is, under abuse of discretion review, is the district court required to use these precise words, or is it sufficient that the record reflects... All I want to know is that you agree that the issue was preserved for appeal. That's the holding of this court in Lynn, yes, Your Honor. All right. Thank you. Thank you, Mr. Rosenthal. Ms. Silver. Your Honors, I'd like to be really crystal clear about this. We are not asking for magic language. And in the cases... I cited myself many, many cases in which the district court did not even talk about deterrence and protection in the context of supervised release. The court focused on deterrence and detection in general. But in all of those cases, there was ample evidence in the record that the district court believed that this particular defendant posed a danger or posed an increased likelihood of returning. And this record does not have that. The only thing that this court and the government have been able to point to that the district court did was this imposition of the special condition. Everything else the district court did in this case suggested that the district court did not believe Mr. Bautista posed an added measure... an added threat... needed an added measure of deterrence or protection, Your Honor. I also want to reiterate that we're not here to talk about the policy underlying this guideline. That, again, is something that the government could have raised below, and the court could have said, I disagree with the policy, I don't care what this commission says, I'm going to impose this anyway. That did not happen. If the court wants to talk about policy, though, as the Fifth Circuit case that Judge Hamilton pointed out, the commission was animated by financial concerns. And this court may also be aware that just this past week, the judicial conference issued new guidelines on cost-cutting measures, and one of those guidelines was a directive to Congress to pass legislation to reduce the number of people on supervised release. So there are many policy reasons actually supporting the commission's decision in this case. Additionally, I do understand the distinction the court is making, and I may not have been clear about that before, between non-aliens who are going to be... or non-illegal aliens who are going to be deported and illegal aliens, or people who have this crime who are going to be deported. I understand that distinction, but that's not a distinction that the commission drew when it made this guideline. And the commission very easily could have said, in a non-illegal reentry case, if the defendant will be deported, ordinarily supervised release should not be imposed. And the commission did not do that. I would also point out that, touching upon the concern that the government raises about this fact that a defendant might stymie his deportation proceedings, might try to, you know, object at the last minute or cause problems, and so this condition is necessary to avoid that, these cases, like Mr. Bautista's, are actually the cases in which that does not happen, and that is because in Mr. Bautista's case, and this is in the record below, and in most of these cases of an illegal alien who was deported and then came back, there is already a legal and valid order of deportation issued against them, and what happens before we even get the case is that ICE has reinstated the order of deportation. So when Mr. Bautista stood before Judge Quarles, there was a valid order of deportation pending against him, and an ICE detainer, and all that will happen with him is that he will go into ICE custody for a certain amount of time and then be deported. So in fact, this is the class of defendants who are least likely to raise the concern that the government was just raising, that seems to really be the only valid reason the government could come up with for imposing this condition in this case. The government itself said that the guideline requires something particular about the defendant, and again I would ask the court to point to what it is that the district court in this case said or did to indicate that he thought there was something particular about this defendant that required more deterrence or protection. Well, if I understood Mr. Rosenstein's concession, or whatever you want to call it, the only so-called other special conditions that apply after he's deported because it says if order deported the defendant should not re-enter the United States without express permission of the Attorney General. That's the only one that I think of those so-called special conditions of supervised release that applies after he is deported. That's correct, Your Honor. That's correct. And I do think that there may be cases in which a defendant needs, or in which a district court decides a defendant needs that added potential punishment, that added reason to deter him from coming back. Oh, I can point to many, many facts that the other cases I cited referred to. So defendants who had multiple re-entries. There's a case, one of the unpublished decisions in this case had a defendant who came back nine different times. There are defendants who... So that's a question of degree. Oh, it's absolutely a question of degree. That's the type of protection that the special release is suggested to this applicant. Absolutely. And it doesn't have to be nine. I mean, that's pretty extreme. But more than one. There are cases in which the district courts, again, as I said, thought the criminal history was so bad that they deported upward. There are cases in which the district court pointed to things like the defendant's gang membership, like the fact that the defendant's prior convictions involved violence towards children. I mean, those are... I'd ask the court to read the cases carefully because they all actually point to a lot of things. What you make about the man has a gun, too, and he's out of the country. And what the conditions of supervised release in those cases are to provide another layer of protection in circumstances where there's a greater risk. Right. And that's because the district court in that case told us that it thought that was necessary because of all these facts about the defendant and we simply don't have that in this case. Thank you, Your Honor. We'll adjourn the court sine die.
judges: Paul V. Niemeyer, G. Steven Agee, Clyde H. Hamilton